FREDERICK PORRETT

*v.*

HENRY HALLIARD and wife.

On a bill to rescind a contract for the sale of land which had been executed, relief refused on the ground that, as to one of the alleged misrepresentations, the proof did not establish it ; and as to the other, there was an adequate remedy at law.

Bill for relief.   On final hearing on pleadings and proofs.

*Mr. H. Traphagen,* for complainant.

*Mr. G. Collins,* for defendants.

THE CHANCELLOR.

The bill is filed for injunction and general relief.   The controversy between the parties grows out of an exchange of real property, which took place in November, 1873, between the complainant and Mr. Halliard, by which the former conveyed to the latter certain land in Jersey City, in consideration of the conveyance by Mr. Halliard to him of a farm in Middlesex county.   In the exchange the complainant's land was valued at $15,000, and the farm at $12,000.   The former was subject to mortgages to the amount of $11,500, which were to be reduced to $6,500, and the latter was to be conveyed subject to mortgages to the amount of $3,302.60.   The complainant was, as part of the consideration of the conveyance to him, to pay Mr. Halliard $250.   The complainant seeks to rescind the contract for exchange, on the ground of fraud, which is alleged to consist in representations which, he says, were made by the defendant to him, to the effect that the mortgages on the farm amounted to only $3,302.60, and that they were held by persons who would not require payment thereof for a

Porrett v. Halliard.

long time, provided the interest should be promptly paid. These representations, he alleges, were false and fraudulent. It appears that, in fact, there was a mortgage for $82 on the farm, in addition to those mentioned in the deed from the defendants to the complainant, and that on the other hand, one of the mortgages, therein stated to be for $400, was, in fact, for only $386, so that the amount of mortgage upon the farm was $3,370.60, or $68 more than represented by Mr. Halliard. There were, also, arrears of interest to a large amount on these mortgages, and also costs of a foreclosure suit, which had been instituted upon one of them before the bargain for the exchange was made, and which was in progress when it was carried out. The conveyances are dated on the 26th of November, 1873, and the deed for the farm was recorded three days afterwards. The exchange appears to have been suggested to the complainant by Spencer M. Rice, (from whom he bought his property in Jersey City, and who held mortgages thereon to the amount of $8,550,) on the 23d or 24th of November, 1873. The complainant had an interview with Mr. Halliard in the afternoon of the same day on which the suggestion was made. The next day he went to see the farm, and he there saw Azariah Dunham, the person from whom Mr. Halliard bought the property. The following day he went to see Mr. Halliard, and agreed to make the exchange. The deeds were delivered on that night, and the next day the complainant took his deed for the farm to New Brunswick, to have it recorded. On the night of that day Mr. Rice received a letter from Mr. Halliard in relation to the deed from the complainant to the latter. To the testimony on the subject of this letter reference will be made hereafter. The proof is, that the deed to the complainant for the farm contained the usual full covenants, but the conveyance was therein declared to be subject to mortgages to the amount, as before stated, of $3,302.60. The pecuniary responsibility of Mr. Halliard is not denied, and, indeed, it is proved.

The bill asks an answer under oath. The answer, which is under oath, admits that Mr. Halliard made the representation complained of as to the amount of the mortgages, but alleges that it was made in ignorance of the existence of the mortgage for $82. It denies that he made the other alleged representation. There is no proof to overcome the answer on this point. The evidence does not show that the alleged representation was made to the complainant. Neither Mr. Rice nor the complainant testifies that it was made to the complainant. The former says it was made to him. The latter is silent on the subject. The nearest approximation to proof that the representation was made to the complainant is in Mr. Halliard's own testimony, in which he says that he told the complainant that he " had been informed that the mortgages on the farm could remain as long as Mr. Porrett wanted them, if the interest was paid." I am satisfied that Mr. Halliard did not then know that the foreclosure had been commenced. But, however that may be, it does not appear but that the fact was in accordance with the alleged representation, except, perhaps, as to the mortgage of $402.60. The sale under the foreclosure was advertised for the 17th of February, 1874. It did not, in fact, take place until the 20th of October in that year. The foreclosure proceedings had been instituted by the holders of the fifth mortgage, which was for $402.60. There is no evidence that these proceedings might not have been dismissed on the payment of interest and costs, and that the holders of the mortgages would not have been willing to have given further time on their mortgage debts, provided the interest were paid promptly. But, besides all this, Mr. Halliard swears that after he ascertained that there was, indeed, a foreclosure suit in progress, he wrote to his lawyer in New Brunswick (the same gentleman who had searched the title of the farm for him), and requested him to ascertain and inform him what the costs of the suit, up to the 27th of November, 1873, were; and when, a few days thereafter, his lawyer gave him the desired informa-

Porrett *v.* Halliard.

tion on the subject, he went to the complainant and offered to pay all expenses that had been incurred up to the date of the complainant's deed for the farm, and all the interest in arrear up to that time. He says that the complainant referred him to Mr. Rice, but he declined to go to the latter. He testifies that he afterwards called on the complainant on the subject, and offered to pay, in addition, part of the costs incurred after the delivery of the deed for the farm, and that the complainant replied that he had very little interest in the matter ; that all he wanted was to get the bond he had given to Rice out of the way, and that Mr. Halliard had better go and see Rice.

The complainant, indeed, on cross-examination, testifies that Halliard never offered to pay the $82 mortgage, and the interest in arrear and costs of foreclosure to the date of the deed of the farm, but he qualifies his denial somewhat by saying that no such offer was made *to his knowledge.* It may be that Mr. Halliard did not offer to pay the $82 mortgage. I see no evidence that he did. But further, there is proof that the complainant knew, before the exchange was made, that the suit for foreclosure had been commenced, though Mr. Halliard did not know it.

Mr. Hardenburgh, one of the complainant's own witnesses, testifies that he thinks he told the latter, when he came up to look at the farm, that Azariah Dunham told him (the witness) that one of the mortgages was under foreclosure. Mr. Dunham, also a witness for the complainant, testifies in reference to that occasion, as follows : " Mr. Hardenburgh told Mr. Porrett that about $400 was wanting. I told him that if that was not paid they would foreclose and sell the property ; I said they would go on and collect that $402.60 ; I told him they had already commenced proceedings ; I told him I had had a letter from the court to answer, at some day which I forgot, to the Garrison mortgage. This conversation with Mr. Porrett was before the purchase, the first time he came to see the farm ; the next time he came he had the deed in his pocket

for the farm." He further says, that subsequently, after the complainant had got his deed for the farm, on the latter showing the deed to him, the witness referred to the necessity of paying the mortgage for $402.60, and said that if it were not paid the property would be sold, because the holders of the mortgage wanted the money.

It is true, the complainant denies that Mr. Dunham spoke to him of the foreclosure on the occasion of his first visit to the farm. He says the conversation was on his third visit, after he had obtained his deed for the farm. The degree of confidence to be placed in the testimony of both the complainant and Mr. Rice, is somewhat affected by their testimony in reference to the letter before referred to, received by the latter, from Mr. Halliard, on the evening of the day on which the deeds were exchanged. Mr. Rice says, in reference to that letter: "I was present when the deeds passed; I think this was the 25th of November, 1873; the night before Thanksgiving I received a letter from Mr. Halliard, after the deeds had passed; the same evening, about seven or eight o'clock in the evening, I showed this letter to Mr. Porrett, and asked him what it meant; I didn't know what it meant; I don't know what became of that letter, whether Mr. Porrett kept it or not; the letter had some bearing on this matter, and said he had to go away, and had tried to see Mr. Porrett and couldn't, and wanted me to see that he was protected in some matter in this trade. *Q.* Did not the letter suggest that the deed to Porrett should not be put on record? *A.* It requested me to defend, or to see that he was protected, and something was to be done before the deed should be put on record; I referred the letter to Mr. Porrett; it was a mystery to me then, as it is now; I credited $5,000 of principal and $580 of interest on the mortgage that night; that was what brought the complainant to my house; this was the night the deed was delivered; this $5,580 was paid by a mortgage on the farm transferred to complainant by Halliard, in Middlesex county; I gave a receipt, besides endorsing it on the mortgage." On

the same subject the complainant testifies : " Mr. Rice showed me a letter he received that day from Mr. Halliard, in which Halliard asked Mr. Rice to prevent, if possible, my deed from going on record; the rest of the letter I don't just recollect." There is no proof of the loss of this letter, the contents of which were thus given in evidence. The fact, in regard to the letter, appears to have been that it was merely a request to Mr. Rice to see that the deed was not recorded until the $5,000 should have been actually receipted for upon the mortgage debt on the Jersey City property.

The fraud in the alleged representation under consideration, is not established. Moreover, the demand for reconveyance (which states no reason or ground) was made in February, 1874, and the bill in this cause was not filed until the 13th of November, in that year. Prior to that time, the decree in the foreclosure suit was purchased by Mr. Halliard, and at Mr. Rice's request sold to him, and the property subsequently sold under the execution and bought in by Mr. Halliard. The delay in coming to this court for relief is not accounted for.

As to the alleged misrepresentation in reference to the amount of encumbrance on the farm, it is enough to say that the complainant had and has an adequate remedy at law for it under the covenants in his deed. The proof is, as before stated, that Mr. Halliard is a man of responsibility, pecuniarily. The bill will be dismissed with costs.